**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | |
|     Carbon IQ, Inc., | : | Case No. 22-12076 |
| | : | Judge Beth A. Buchanan |
|     Debtor. | : | |
| | : | Chapter 7 |

| | | |
|---|---|---|
| James A. Coutinho, Chapter 7 Trustee, | : | |
| | : | |
|     Plaintiff, | : | |
| | : | |
|     vs. | : | |
| | : | |
| Cooley, LLP; Matt Hallinan, Esq.; Michael Tu, Esq.; Alexandra Mayhugh, Esq.; Han Wang, Esq.; and DOES 1–20, | : | Adversary Proceeding No._____ |
| | : | |
|     Defendants. | : | |
| | : | |

**<u>ADVERSARY COMPLAINT</u>**

For his Complaint, Plaintiff James A. Coutinho as Chapter 7 Bankruptcy Trustee for Debtor Carbon IQ, Inc., alleges:

**<u>Nature of the Case</u>**

1. This case shows what happens when lawyers try to serve conflicting interests. The defendant lawyers and their law firm, Cooley, LLP, represented both Carbon IQ, Inc. and its CEO, Ben Cantey. But when information arose showing—or at the very least, putting a reasonable attorney on notice—that Cantey was defrauding Carbon IQ and its shareholders, Defendants' loyalty to Cantey caused them to breach their duties of loyalty and care to their other client, Carbon IQ. Defendants' failures empowered Cantey to continue to harm Carbon IQ to promote his own interests. Defendants' actions and inactions caused substantial harm to its client, Carbon IQ.

**Jurisdiction and Venue**

1. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedures (the "Rules"), the Trustee states that this adversary proceeding arises under and relates to the above-captioned case pending in the above-stated District and Division of this Court.

2. Venue in this Court is proper under 28 U.S.C. § 1409 and the Trustee's monetary claims exceed the amounts set forth in 28 U.S.C. § 1409(b).

3. This case is a core proceeding under, among other provisions, 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (F), and (O).

4. Pursuant to Rule 7008, the Trustee consents to the entry of a final order or judgment in the event this proceeding is determined to be non-core.

5. If it is determined that the Court cannot enter final orders or judgments in this proceeding consistent with Article III of the United States Constitution, the Trustee consents to the Court entering final orders or judgments in this proceeding.

**The Parties**

6. The Debtor, Carbon IQ, Inc., filed a voluntary petition under Chapter 11 of Title 11 of the United States Code on December 7, 2022 (the "Petition Date").

7. On February 24, 2023, the Court entered an Agreed Order Converting the Chapter 11 Subchapter V to a Chapter 7 (ECF No. 74 in the underlying Bankruptcy Case), which converted this case to a proceeding under Chapter 7 of the Bankruptcy Code.

8. Plaintiff James A. Coutinho brings this Adversary Complaint solely in his capacity as the duly appointed Chapter 7 Bankruptcy Trustee for Debtor Carbon IQ, Inc.

9. On information and belief, Defendant Cooley LLP is a California limited liability partnership engaged in providing legal services throughout the United States and globally. At all relevant times, Defendants Halliman, Tu, Mayhugh, and Wang were acting as employees or agents of Defendant Cooley LLP and were acting within the course and scope of their employment or agency.

10. On information and belief, Defendant Matt Hallinan is an attorney and partner at Cooley, licensed to practice law and residing in California.

11. On information and belief, Defendant Michael Tu is a retired attorney and retired partner from Cooley, licensed to practice law and residing in California.

12. On information and belief, Defendant Alexandra Mayhugh is an attorney and associate at Cooley, licensed to practice law and residing in California.

13. On information and belief, Defendant Han Wang is an attorney and associate at Cooley, licensed to practice law and residing in California.

**Background Facts**

**I.    Defendants' Legal Malpractice**

14. In or around March or April of 2022, Defendants were engaged by Carbon IQ as corporate counsel.

15. Shortly after Carbon IQ engaged Defendants, on April 18 and 19, 2000, Carbon IQ and Cantey were served with a California state court lawsuit in the case *Justin Boisvert v. Carbon IQ, Inc. (dba Rumby), et al.*, Case No. 22STCV12600 (the "Boisvert Litigation"). Boisvert asserted various claims against both Carbon IQ and Cantey concerning Boisvert's early involvement with Carbon IQ in 2019 and 2020.

16. Defendants represented both Carbon IQ and Cantey in the Boisvert Litigation and removed the Boisvert Litigation to the United States District Court for the Central District of California (Case No. 2022-cv-3303).

17. On June 13, 2022, Boisvert's counsel Russell Selmont called Defendant Tu at Cooley to personally advise Tu of Cantey's fraudulent contact with respect to both Carbon IQ and a prior company Cantey had been involved within in Texas. Selmont provided Tu specific details concerning Cantey's fraudulent activities, including an active securities fraud investigation of Cantey in Texas by the Texas State Securities Board. Selmont has provided a declaration detailing his conversation with Defendant Tu. (*See* Exhibit 1, true copy of a Declaration of Russell M. Selmont, at ¶ 8.)

18. On June 15, 2022, Boisvert's counsel filed a motion to remand the Boisvert Litigation to state court. Defendants received and reviewed a copy of the motion and its attachments. The motion attached declarations of Boisvert (true copy attached here as Exhibit 2) as well as Elliott Chen, Esq. (true copy attached here as Exhibit 3) and Benjamin Smith, the CEO of the prior Texas company Cantey had defrauded (true copy attached here as Exhibit 4). Each of these declarations detailed specific ways in which Cantey had engaged in fraudulent activities with respect to both Carbon IQ and the prior Texas company. (*See* Ex. 2 at ¶¶ 22–27, regarding forged documents and the Texas investigation; Ex. 3 at ¶¶ 2–9, regarding alterations to Carbon IQ's Rumby website after Boisvert complaint and notice of removal were filed; Ex. 4 at ¶¶ 2–10, regarding Cantey's fraud relating to the prior Texas company).

19. When Defendants undertook the joint representation of Carbon IQ and Cantey, they knew that Cantey was not the only shareholder of Carbon IQ. Defendants also knew that Carbon IQ was seeking additional shareholders and/or investments.

4

20. Despite knowing of Cantey's forgery and other fraudulent conduct regarding Carbon IQ and his prior Texas company:

    a. Defendants did not disclose this information to other officers or shareholders of Carbon IQ;

    b. Defendants deliberately and/or recklessly concealed this information from other officers and shareholders of Carbon IQ;

    c. Defendants continued to assist Cantey and his efforts in raising additional investor financing, while concealing this information instead of disclosing it to other officers and shareholders of Carbon IQ or to potential investors.

21. Defendants also represented to other Carbon IQ shareholder that the company had Directors & Officers Liability Insurance based solely on Cantey's word, even though Defendants knew of Cantey's forgery and fraud at the time, even though they knew that Cantey had previously told them Carbon IQ did not have D&O insurance, and even though they had not seen any policy or other documentation confirming existence of the insurance despite asking Cantey for it

22. Defendants also prepared a summary of the Boisvert Litigation in August 2022 called a "Case Description for Investors" to place in the due diligence data vault provided to potential investors. (True copy attached as Exhibit 5.)

23. Defendants' Case Description for Investors knowingly and purposefully omitted any reference to the serious fraud allegations against Cantey and the evidence revealed in the Boisvert Litigation supporting those allegations.

24. In all of their misconduct described above, Defendants acted in concert with Cantey.

25. Despite actively defending Cantey individually in the Boisvert Litigation and knowing of his forgery and other fraudulent cats, Defendants simultaneously represented Carbon IQ and served as Carbon IQ's corporate counsel. This created a clear conflict of interest that caused substantial harm to Carbon IQ and its shareholders.

26. Cooley continued its efforts to help Cantey conceal his fraudulent conduct even after other shareholders/board members started inquiring about concerns with Carbon IQ. In late September 2022, despite knowing about another Carbon IQ shareholder/board member's concerns about potential fraud and his repeated requests for documents, Defendants mentioned in an email to Cantey that they were "trying to avoid" the board member's calls and described him as "persistent/demanding." This email confirms that despite acknowledging the board member's growing concerns, Defendants prioritized protecting Cantey and managing optics over their duties to Carbon IQ.

27. In addition to aiding and abetting Cantey's fraud, Defendants' misconduct described above resulted in multiple claims and lawsuits against Carbon IQ. These lawsuits include claims by shareholders and investors for amounts allegedly lost because of Cantey's fraud concerning Carbon IQ. Had Defendants not concealed the information they had about Cantey's fraud from other Carbon IQ stakeholders, these claimants would not have suffered their losses and would not have asserted claims or lawsuits against Carbon IQ.

28. For one example, the largest claim against Carbon IQ is based on an August 26, 2022 investment of $3 million by Refinery Management, LLC. Refinery sued Carbon IQ (Case No. 1:22-cv-00706, United States District Court for the Southern District of Ohio). Defendants knew about Cantey's forgery and fraud relating to Carbon IQ and his prior Texas company as well as the securities fraud investigation of Cantey by the Texas State Securities Board well

6

before Refinery's investment. Had Defendants not concealed Cantey's misconduct from other Carbon IQ stakeholders, Refinery Management would not have made and lost its $3 million investment, and so would not have asserted its substantial claim and lawsuit against Carbon IQ.

29. On October 7, 2022, Cantey put wrote in an email to Defendants that he had engaged in widespread fraud, including securities fraud at Carbon IQ, falsifying business and financial information, and misappropriating investor funds in Carbon IQ. (Exhibit 6.)

30. Cantey detailed certain of his fraud and breaches of fiduciary duty in writing, stating:

    a. Rumby's (Carbon IQ's) growth numbers and investor updates had been false since October 2020;

    b. The numbers had been presented since then to existing and potential investors in order to raise more funds;

    c. Canty had paid himself large commissions on each round of funding;

    d. Only minor bookkeeping had been done and no taxes had been filed;

31. Only after this written admission, on October 10, 2022, did Defendants inform any other Carbon IQ stakeholders that they were withdrawing as counsel for both Carbon IQ and Cantey.

32. Cantey had committed other fraud and breaches of fiduciary duty not mentioned in his email confession, such as stealing Carbon IQ/investor funds to purchase his $1.7 million personal residence in May 2022, among other things.

33. Cooley was well aware for months before Cantey's October 7, 2022 written admission of material fraud allegations involving both Carbon IQ and his prior Texas company,

but concealed that information from other Carbon IQ shareholders, investors, board members, and officers.

34. Discovery is necessary to reveal the full extent of Defendants' knowledge regarding Cantey's misconduct and the full extent of Defendants' actions to conceal or aid Cantey's misconduct.

## II. Preferential Transfers

35. On or about April 1, 2022, Carbon IQ engaged Cooley to provide legal services in connection with general corporate matters.

36. The document attached to this Complaint as Exhibit 7 is a true and accurate copy of the Engagement Agreement executed by Cooley and Carbon IQ.

37. On or about May 4, 2022, Carbon IQ and Cooley agreed to additional services to be provided by Cooley to Carbon IQ and to Benjamin Cantey individually related to the Boisvert Litigation.

38. The document attached to this Complaint as Exhibit 8 is a true and accurate copy of the Supplemental Engagement Letter between Cooley, Carbon IQ, and Cantey.

39. Under the terms of the Engagement Agreement between Cooley and Carbon IQ, all invoices from Cooley were to be paid in full on receipt. *See* Engagement Agreement, Exhibit 7, p. 5, §11.

40. Despite the requirement of invoices being paid in full on receipt, Carbon IQ never paid the Cooley invoices according to the agreed upon business terms.

41. For example, on July 6, 2022, Cooley sent to Carbon IQ invoice numbers 2514173 and 2514174 for services rendered through May 31, 2024.

42. The document attached to this Complaint as Exhibit 9 is a true and accurate copy of the transmittal email with invoice numbers 2514173 and 2514174 as attachments.

43. However, on August 2, 2022, Cooley sent to Carbon IQ a follow-up email indicating that the foregoing invoices had not been paid upon receipt and were, in fact, past due.

44. The document attached to this Complaint as Exhibit 10 is a true and accurate copy of the email from Cooley to Carbon IQ dated August 1, 2022, indicating that the May invoices were past due.

45. In fact, Carbon IQ did not pay any of the invoices referenced in the August 1, 2022, email, Exhibit 10, until August 29, 2022, when Carbon IQ wired $104,582.10 to Cooley.[1]

46. On October 11, 2022, Carbon IQ wired $147,570.00 to Cooley to pay certain outstanding invoices.

47. A summary of the invoices that were paid by the foregoing wire on October 11, 2022, is set forth in the following table:

| Invoice Number | Matter | Invoice Date | Services Rendered Through | Transmittal Date | Amount |
|---|---|---|---|---|---|
| 2527702 | Boisvert Litigation | 7/31/2022 | 5/31/2022 | 8/3/2022 | $54,236.46 |
| 2535366 | General Corporate | 8/24/2022 | 7/31/2022 | 8/26/2022 | $12,181.95 |
| 2535367 | 2022 SAFE Financing | 8/24/2022 | 7/31/2022 | 8/26/2022 | $3,173.40 |
| 2535368 | Boisvert Litigation | 8/24/2022 | 7/31/2022 | 8/26/2022 | $14,496.00 |
| 2557573 | General Corporate | 9/30/2022 | 8/31/2022 | 10/4/2022 | $7,926.75 |
| 2557574 | 2022 SAFE Financing | 9/30/2022 | 8/31/2022 | 10/4/2022 | $9,016.20 |
| 2557575 | Boisvert Litigation | 9/30/2022 | 8/31/2022 | 10/4/2022 | $46,538.86 |
| | | | | **TOTAL:** | **$147,569.62** |

---

[1] This transfer was outside the 90-day preference period, so the Trustee does not seek to recover it as a preference payment. It is referenced as an example of the timing of payments between Carbon IQ and Cooley (though it may be recoverable as part of any disgorgement remedy potentially available for other claims against Defendants).

9

48. The document attached to this Complaint as Exhibit 11 is a true and accurate copy of the transmittal email dated August 3, 2022, with invoice number 2527702 as an attachment.

49. The document attached to this Complaint as Exhibit 12 is a true and accurate copy of the transmittal email dated August 26, 2022, with invoice numbers 2535366, 2535367, and 2535368 as attachments.

50. The document attached to this Complaint as Exhibit 13 is a true and accurate copy of the transmittal email dated October 4, 2022, with invoice numbers 2557573, 2557574, and 2557575 as attachments.

51. On October 7, 2022, Benjamin Cantey, the founder and CEO of Carbon IQ's business, emailed Cooley, through its attorney Matt Hallinan, and confessed that he had used his position with Carbon IQ to commit massive fraud and to embezzle money, and that Carbon IQ was insolvent.

52. The document attached to this Complaint as Exhibit 6 is a true and accurate copy of an email chain between Mr. Cantey and Mr. Hallinan, starting with Mr. Cantey's October 7, 2022, email referenced in the prior paragraph.

53. That same evening, after Mr. Cantey had informed Cooley of his fraudulent activities and the insolvency of the Company, Cooley sought payment of its outstanding invoices that it had sent in August 2022.

54. The document attached to this Complaint as Exhibit 14 is a true and accurate copy of an email chain starting October 7, 2022, between Mr. Cantey and David Kong from Cooley's accounting department wherein Cooley requested payment of outstanding invoices.

10

55. On October 10, 2022, upon the request of Mr. Cantey, Cooley resent each of the outstanding invoices set forth in the table above, ultimately resulting in payment to Cooley via a wire in the amount of $147,569.62 (the "Preference Payment").

56. The document attached to this Complaint as Exhibit 15 is a true and accurate copy of an email chain starting on October 10, 2022, between Mr. Cantey and Mr. Kong whereby the outstanding invoices were transmitted again to Carbon IQ.

57. After the Preference Payment was made, Cooley continued to provide certain services to Carbon IQ that ultimately were not paid for.

58. On February 7, 2023, Cooley filed a Proof of Claim in the underlying bankruptcy case for a total of $208,013.96. *See* Claim No. 3 (the "Cooley PoC").

59. The Cooley PoC was based on the invoices summarized in the following table:

| Invoice Number | Matter | Invoice Date | Services Rendered Through | Amount |
|---|---|---|---|---|
| 2569023 | General Corporate | 10/21/2022 | 9/30/2022 | $12,753.58 |
| 2569024 | 2022 SAFE Financing | 10/21/2022 | 9/30/2022 | $15,243.30 |
| 2569025 | Boisvert Litigation | 10/21/2022 | 9/30/2022 | $65,404.50 |
| 2576888 | General Corporate | 11/10/2022 | 10/31/2022 | $16,346.25 |
| 2576892 | Boisvert Litigation | 11/10/2022 | 10/31/2022 | $49,885.09 |
| 2594934 | Boisvert Litigation | 12/10/2022 | 12/7/2022 | $2,745.50 |
| 2594935 | Boisvert Litigation | 12/10/2022 | 11/30/2022 | $45,635.74 |
|  |  |  |  | **$208,013.96** |

60. The services rendered under invoice numbers 2569023, 2569024, and 2569025 were for services through September 30, 2022, which pre-dates the Preference Payment. Therefore, Cooley is not entitled to any new value credit for those invoices.

61. The services rendered under invoice numbers 2576892 and 2576888 were for services that both pre-dated and post-dated the Preference Payment.

62. For invoice 2576892, services valued at $38,101.00 were provided on or before the date of the Preference Payment, leaving $11,785.00 as potential new value.

63. For invoice 2576888, services valued at $14,596.00 were provided on or before the date of the Preference Payment, leaving $1,751.00 as potential new value.

64. Cooley may be entitled to new value credit for invoiced 2594934 and 2594935, but subject to any claims against Defendants that may entitle Plaintiff to recover damages or disgorgement.

65. Based on the Petition Date, the ninety (90) day preference period ran from September 8, 2022, through the Petition Date.

66. The Preference Payment occurred within the preference period and is avoidable by the Trustee.

67. Prior to filing this case, the Trustee, in accordance with 11 U.S.C. § 547(b), conducted reasonable due diligence into the circumstances of the case to take into account any known or knowable defenses of the Defendant that would be available under 11 U.S.C. § 547(c).

68. The Defendant is not entitled to the "contemporaneous exchange" affirmative defense under 11 U.S.C. § 547(c)(1) because there was no exchange of value at the time of the Preference Payment.

69. The Defendant is not entitled to the "ordinary course of business" affirmative defense under 11 U.S.C. § 547(c)(2) because, first, the Preference Payment was made outside of the required business terms between Carbon IQ and the Defendant, and, second, the Defendant

took action outside the normal course of business to collect its fees from Carbon IQ after learning of Mr. Cantey's fraud and the insolvency of Carbon IQ.

70. The defense under 11 U.S.C. § 547(c)(3) does not apply to the Preference Payment because the Preference Payment did not involve the perfection of a security interest.

71. The Defendant may be entitled to retain a portion but not all of the Preference Payment via application of the "new value" defense under 11 U.S.C. § 547(c)(4) (again, subject to any claims against Defendants that may entitle Plaintiff to recover damages or disgorgement). Despite setting forth the potential new value amounts above, the Trustee does not admit that all of the potential new value amounts are truly new value to Carbon IQ and reserves all rights related to the same.

72. The affirmative defense under 11 U.S.C. § 547(c)(5) does not apply to the Preference Payment because the Preference Payment did not involve the perfection of a security interest.

73. The affirmative defense under 11 U.S.C. § 547(c)(6) does not apply to the Preference Payment because the Preference Payment did not involve the perfection of a statutory lien.

74. The affirmative defense under 11 U.S.C. § 547(c)(7) does not apply to the Preference Payment because the Preference Payment is not related to a payment for a domestic support obligation.

75. The affirmative defense under 11 U.S.C. § 547(c)(8) does not apply to the Preference Payment because this is a business case, and that defense only applies to cases where the debts are primarily consumer debts.

76. The affirmative defense under 11 U.S.C. § 547(c)(9) does not apply to the Preference Payment because the Preference Payment is in excess of the statutory minimum for recovery, which is presently $7,575.00.

77. Accordingly, the Transfer is avoidable pursuant to 11 U.S.C. § 547(b).

## COUNT ONE
### Legal Malpractice
### Against All Defendants

78. Plaintiff incorporates the above allegations by reference as if fully restated here.

79. At all relevant times, Defendants had attorney-client relationships with Carbon IQ.

80. At all relevant times, Defendants owed Carbon IQ a duty of care. Defendants also owed Carbon IQ fiduciary duties, including a duty of loyalty.

81. Through their conduct described above, Defendants breached their duty of care and fiduciary duties owed to Carbon IQ, including by representing Carbon IQ despite a clear and unwaived or nonwaivable conflict of interest, by concealing the information Defendants knew about Cantey's prior and ongoing fraudulent activity to other Carbon IQ shareholders, officers, or stakeholders, and by aiding Cantey in his fraud and breaches of fiduciary duty.

82. Defendants' actions have caused damage to Carbon IQ.

## COUNT TWO
### Aiding and Abetting
### Against All Defendants

83. Plaintiff incorporates the above allegations as if fully restated here.

84. To the extent California law may govern some or all of Defendants' actions, Plaintiff alleges that Defendants are liable for aiding and abetting Canty's fraud and breaches of fiduciary duty directed toward Carbon IQ.

85. Defendants knew that Cantey had committed unlawful or fraudulent acts, both regarding Carbon IQ (such as forging documents relating to Mr. Boisvert) and regarding Cantey's prior Texas company. Defendants knew about Cantey's unlawful intent.

86. Despite Defendants' knowledge, they intentionally concealed this information from other Carbon IQ officers, shareholders, and stakeholders. This included, without limitation, by preparing the Case Description for Investors about the Boisvert Litigation and intentionally omitting from that document any reference to the information or evidence that had been revealed about Cantey's fraudulent acts regarding Carbon IQ and his prior Texas company.

87. Defendants knew that their actions and omissions would facilitate Cantey's fraud and breaches of fiduciary duty directed at Carbon IQ.

88. Defendants' actions have caused Carbon IQ damage.

## COUNT THREE
### Avoidance of Preference Payment under 11 U.S.C. § 547
### Against Defendant Cooley LLP

89. Plaintiff incorporates the above allegations by reference as if fully restated here.

90. The Preference Payment was a transfer of money from the Debtor.

91. The Defendant was a creditor of the Debtor at the time of the Preference Payment.

92. Moreover, the Defendant has filed a proof of claim in this case indicating that it is owed $208,013.96 from the Debtor. *See* Cooley PoC.

93. The Preference Payment was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because the Preference Payment was for a debt owed to the Defendant from the Debtor and the payment of it was for the Defendant's benefit.

15

94. The Preference Payment was made for, or on account of, an antecedent debt owed by the Debtor to the Defendant before the Preference Payment was made (i.e., on account of the unpaid invoices from the Defendant at the time).

95. The Preference Payment was made while the Debtor was insolvent based upon the information contained in documents/schedules filed or provided by the Debtor in the Debtor's case or in connection with the Debtor's case.

96. The Trustee is also entitled to the presumption of insolvency for the Preference Payment pursuant to 11 U.S.C. § 547(f).

97. The Preference Payment was made on October 11, 2024, which is within the 90-day preference period based on the Petition Date.

98. As a result of the Preference Payment, the Defendant received more than it would have received if (i) the Debtor's case were under chapter 7 of the Bankruptcy Code, (ii) the Preference Payment had not been made, and (iii) Defendant received payment of its debt under the provisions of the Bankruptcy Code.

99. Specifically, as evidenced by the Debtor's schedules as well as the proofs of claim that have been filed in the Debtor's case, the Debtor's liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtor's bankruptcy estate. If the Preference Payment is not avoided, the Defendant would obtain all of those funds. Defendant would be entitled only to a portion of those funds had the Preference Payment not occurred based on the existence of other claims against the Debtor.

100. Accordingly, the Preference Payment is avoidable pursuant to 11 U.S.C. § 547(b).

## COUNT FOUR
### Recovery of Transfers under 11 U.S.C. § 550 and Preservation under 11 U.S.C. § 551
### Against Defendant Cooley LLP

101. Plaintiff incorporates the above allegations by reference as if fully restated here.

102. Pursuant to 11 U.S.C. § 550, the Plaintiff is entitled to recover, for the benefit of the Debtor's bankruptcy estate, the value of any avoided transfers, including the Preference Payment, from the Defendant as the person for whose benefit the transfers were made, or as the immediate or mediate transferee of the transfers.

103. Pursuant to 11 U.S.C. § 551, the Plaintiff is entitled to a judgment preserving the avoided transfers for the benefit of the bankruptcy estate.

## COUNT FIVE
### Disallowance of Claim in the Chapter 7 Case under 11 U.S.C. § 502(d)
### Against Defendant Cooley LLP

104. Plaintiff incorporates the above allegations by reference as if fully restated here.

105. Defendant Cooley LLP is a transferee of the one or more transfers which are avoidable under 11 U.S.C. § 547.

106. The Trustee has other claims against the Defendant as set forth in this Complaint.

107. Pursuant to 11 U.S.C. §502(d), any claims held by the Defendant against the Debtor, including the Cooley PoC, must be disallowed unless and until the Defendant pays to Plaintiff the amount of the transfers and other obligations as described in this Complaint.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests judgment as follows:

A. Under Count One, judgment jointly and severally against all Defendants for damages in an amount to be proven and determined at trial, to include

compensatory damages, punitive damages, disgorgement, and all other damages permitted by law;

B. Under Count Two, judgment jointly and severally against all Defendants for damages in an amount to be proven and determined at trial, to include compensatory damages, punitive damages, disgorgement, and all other damages permitted by law;

C. Under Count Three, judgment against Defendant Cooley LLP avoiding the Preference Payment and any other preferential transfers to the Defendant;

D. Under Count Four, judgment against Defendant Cooley LLP permitting the recovery of any avoided transfers from the Defendant and the preservation of such transfers for the benefit of the bankruptcy estate;

E. Under Count Five, judgment against Defendant Cooley LLP denying any claims against the bankruptcy estate until the Trustee's claims are paid;

F. A grant of pre- and post-judgment interest;

G. An award of Plaintiff's reasonable attorneys' fees, expenses, and costs of this action to the extent permitted by law; and

H. All other relief the Court deems just, proper, or equitable.

Respectfully submitted,

/s/ Barton R. Keyes
Barton R. Keyes    (0083979)
Cooper Elliott
305 West Nationwide Boulevard
Columbus, Ohio 43215
(614) 481-6000
(614) 481-6001 (Facsimile)
bartk@cooperelliott.com

/s/ James A. Coutinho
James A. Coutinho    (0082430)
Andrew D. Rebholz    (0102192)
Allen Stovall Newman & Ashton LLP
10 West Broad Street, Suite 2400
Columbus, Ohio 43215
T: 614-221-8500    F: 614-221-5988
coutinho@asnalaw.com
rebholz@asnalaw.com

*Counsel for the Trustee*