

Matt Hallinan  
T: +1 310 883 6459  
mhallinan@cooley.com

**Privileged & Confidential**  
Via E-Mail to:  ben@rumby.co

April 1, 2022

Carbon IQ INC  
Ben Cantey, CEO and Founder  
440 Northern Ave  
Cincinnati, OH 45229

**Re:  Engagement Agreement**

Dear Ben:

We are pleased that we have been engaged to assist Carbon IQ INC (the "Company") in connection with general corporate matters.

The enclosed Memorandum, incorporated by reference herein (collectively, the "Engagement Agreement"), sets forth our practices and policies on fees, billing, collection, conflicts, and other material terms of our engagement.  Should the Company request and we agree that additional services will be performed by us in this or other matters, then the terms of this Engagement Agreement will govern those additional services unless we agree in writing on different terms.

I will have primary initial responsibility for the Company's representation and will utilize other attorneys and paralegals in the firm in the best exercise of my professional judgment. If at any time there are questions, concerns or criticisms, please contact me at once.

We believe that our attendance at Board of Directors meetings is an important aspect of building our relationship with a new corporate client.  Accordingly, we will not charge for attending regular meetings of the Company's Board of Directors that take place within the geographic area in which this office is located, or for our participation by conference telephone call in regular Board meetings held outside the area.  This policy covers travel time to and from Board meetings, but does not cover any work done in preparation for, or as a follow-up to, Board meetings, nor does it cover meetings with management that involve the rendering of legal services and that may be scheduled around Board meetings.  Furthermore, this policy applies only if the Company is reasonably prompt in the payment of our statements.  From time to time we will discuss with the Company whether it is still mutually beneficial for us to continue to attend Board meetings on this basis.  In any event, this policy will no longer apply after the Company has achieved significant profitability or has become a public company.

If the terms of our Engagement Agreement are acceptable, please indicate the Company's agreement by arranging for a copy of this letter to be signed and returned to us, retaining this letter for the Company's records.  Facsimile and electronic signatures are as effective as original signatures.  If there are any questions about our Engagement Agreement, please call me.  We look forward to working with the Company and hope this marks the beginning of a long and mutually satisfying relationship.



PLAINTIFF'S EXHIBIT 7

# Cooley

Carbon IQ INC
April 1, 2022
Page Two

Sincerely

*[signature]*

Matt Hallinan

**ACCEPTED AND AGREED:**

**Dated:** April 5, 2022

Carbon IQ INC

**By:** *Ben Cantey*
Ben Cantey

**Title:** Mr



# COOLEY LLP

# TERMS OF ENGAGEMENT

Dated: April 1, 2022

This Memorandum describes the terms on which our firm will provide and bill for our legal services to Carbon IQ INC (the "Company"):

    **1.**     **Scope.** We agree to provide the Company with legal services, as requested by the Company from time to time, which in our professional judgment are reasonably necessary and appropriate in connection with our engagement as described in the letter accompanying this Memorandum. At this time, our engagement is limited to the matters described in the letter, though we would be pleased to consider representing the Company in other matters as the Company may request. The terms and conditions of our engagement in any other matter will be those set forth in the accompanying letter and this Memorandum (collectively, our "Engagement Agreement"), unless the Company and our firm otherwise agree in writing. In all matters in which we represent the Company, we will provide services of a strictly legal nature. It is understood that the Company will not be relying on us for business, investment, or accounting advice, nor to assess the character or creditworthiness of persons with whom the Company may deal.

    **2.**     **Fees.** Our objective is to obtain the results the Company desires in the most cost-effective manner possible. The hourly rates of attorneys and other members of our professional staff (e.g. paralegals and e-discovery professionals) provide the principal basis for billing for our services. We base these rates on various factors which include years of experience, specialization in training and practice, and level of professional attainment. Currently our normal hourly rates for attorneys and other members of our professional staff range from $185 to $1,925. After applying the discount in Section 3 below, my current rate is $1,080, the current rate for Zachary Allen (associate) is $738 and the current rate for Tracey Christofferson (paralegal) is $373.50. We review and adjust the schedule of rates from time to time. In addition, in connection with certain forms of legal work in which a particularly high degree of expertise is required, our rates for such specialized services may exceed our normal hourly rates. The Company will be responsible for the rates in effect at the times that services are performed.

    **3.**     **Emerging Growth Company Discount.** Through at least December 31, 2023, we agree to extend to the Company a 10% off of our standard rates, other than, unless otherwise confirmed in writing, for mergers and acquisitions, public offerings or services rendered by our Litigation Department, provided that the Company is reasonably prompt in the payment of its bills.

    **4.**     **Complimentary Transition Hours**. In addition, because we would be new to the Company, we would agree to provide up to ten (10) hours of complimentary attorney time as part of the transition process in understanding your business and learning to support the company's contract and other needs.

    **5.**     **Costs and Disbursements.** Often it is necessary for us to pay for items such as travel, lodging, meals, and deposition transcripts. Similarly, some matters require substantial amounts of essential services such as electronic discovery management, computerized legal research, electronic trademark docketing and charges for overtime for non-attorney personnel, and ancillary services such as photocopying, word processing, messengers, overnight mail, postage, telephone calls, facsimile, and desktop publishing. To allocate these costs fairly and to keep billing rates as low as possible for those matters that do not involve such costs, these items are separately itemized in our statements of account as "costs and disbursements recorded." Some "costs and disbursements" represent out-of-pocket costs, some

represent an allocation of overhead costs associated with the items and others represent a combination of both factors. Schedule A, attached hereto and incorporated herein, lists certain of our current standard costs and disbursements, which may change from time to time. The Company will be responsible for paying the amounts in effect when they are incurred. In some circumstances, particularly with regard to substantial amounts, we will ask the Company either to pay costs directly or to fund them in advance.

6. **Outside Experts.** In the course of our representation it may be appropriate, with the Company's advance approval, to retain persons of special training or expertise to assist in our provision of legal services (*e.g.,* accountants, foreign lawyers, investigators). Because there are privileges that may apply to services that an attorney requests from a third party, it may be advisable, depending on the circumstances, for our firm to assume responsibility for hiring such experts. The Company will be obligated to pay the invoices for fees and expenses of such experts, whether they are retained by our firm or by the Company directly.

7. **Cooley LLP's Hong Kong Branch.** You agree that we may, where appropriate, work with Cooley LLP's Hong Kong Branch ("Cooley HK") on your matters. Please note the following: (a) Cooley HK shall process any personal information you provide to it or which it obtains in connection with providing its services to you ("Personal Information") in accordance with any applicable data protection law and/or relevant data protection registration; and (b) Cooley HK may use Personal Information for the following purposes: (i) for disclosure to other professional advisers working for you and/or with it on the same matter; (ii) for disclosures to its auditors; (iii) to conduct specific tests on its existing or new systems, networks, applications or software; (iv) for direct marketing communications to you; and (v) as otherwise legally or ethically required.

8. **CYL & Partners in Hong Kong**. You agree that we may, where appropriate, engage CYL & Partners ("CYLP"), as our agent to represent you on legal matters in accordance with local requirements. CYLP is in association with Cooley HK. We will discuss the engagement of CYLP with you (a separate engagement may be required depending on the nature of the instruction), including which CYLP attorneys and staff may be involved and the likely costs. In addition, you agree that we may provide your confidential information to CYLP for matters for which CYLP will be acting for you, and that CYLP may disclose such information as necessary for local regulatory compliance.

9. **Cooley UK and Cooley LLP's Belgian Branch**. You agree that we may, where appropriate, as agent on your behalf, engage Cooley (UK) LLP ("Cooley UK") and/or Cooley LLP's Belgian Branch ("Cooley Belgium") to represent you under their respective terms of engagement together with their respective Data Protection Agreement ("DPA"). You agree that you are not a client of Cooley UK or Cooley Belgium unless we have engaged Cooley UK or Cooley Belgium on your behalf or you have engaged Cooley UK or Cooley Belgium directly. Whether you engage Cooley UK or Cooley Belgium directly or through us, please note the following: (a) Cooley UK/Cooley Belgium is a data controller with respect to your data; (b) Cooley UK/Cooley Belgium shall process any Personal Information in accordance with any applicable data protection law and/or relevant data protection registration; (c) the DPA sets out how it may use Personal Information for the provision of its services to you; (d) Cooley UK/Cooley Belgium may also use Personal Information for the following purposes: (i) for disclosure to other professional advisers working for you and/or with it on the same matter; (ii) for disclosures to its auditors; (iii) to conduct specific tests on its existing or new systems, networks, applications or software; (iv) for direct marketing communications to you; (v) for disclosures to tax authorities; and (vi) as otherwise legally or ethically required.

10. **Anti-Money Laundering Checks.** UK, Belgian and Hong Kong laws require Cooley UK/Cooley Belgium/Cooley HK to undertake "know your client" checks on its clients and prospective clients and to check the legitimacy of the source of their funds. This can include obtaining evidence of a client's identity and beneficial ownership, and obtaining information about the client through a credit reference agency and a third party online identity verification provider. You agree to cooperate fully with us in

# Cooley

performing such checks. The data will be used to confirm the identity of the person(s) providing it only and will be processed for the purposes of preventing money laundering or terrorist financing unless permitted otherwise by law or regulation or you provide consent. If Cooley UK/Cooley Belgium/Cooley HK is unable to obtain satisfactory "know your client" and identity evidence or otherwise satisfy our regulatory obligations within a reasonable period, it must withdraw from representing you. In such circumstances, you will nevertheless be liable for its fees and expenses incurred to the date it stops representing you. In certain circumstances, Cooley UK/Cooley Belgium/Cooley HK may be required by law to disclose suspicions of money laundering, prohibited transactions or certain other activities (by clients, prospective clients or anyone associated with matters on which we are acting) to the relevant regulatory authorities without your consent. Cooley UK/Cooley Belgium/Cooley HK does not accept any liability for losses or costs flowing directly or indirectly from its compliance with these duties (or its duties as it understands them) with respect to the matters outlined above.

**11. Statements of Account.** Our policy is to bill each client monthly for all services performed and costs and disbursements recorded in the previous month. We will issue our statements of account from our San Francisco office. Those statements will be payable by good funds delivered to our San Francisco office. Because there are sometimes delays in the accrual of costs, we will occasionally include accrued costs in a subsequent statement. The Company agrees to pay our statements in full on receipt. If full payment is not received within 30 days of the statement date, we will impose a late charge of 0.5% per month (6% annual) on the unpaid balance. The purpose of the late charge is to assess on an equitable basis the added expenses incurred by our firm for overdue accounts.

As security for the payment of the fees, costs, and disbursements incurred on the Company's behalf, and without prejudice to any other rights, recourse or remedies we may have, the Company hereby grants us a security interest in and lien upon any sum(s) that may be on deposit in our client trust and/or retainer account(s) in connection with any engagement covered by our Engagement Agreement. In addition, as to any matters covered by our Engagement Agreement that involve litigation or threatened litigation, or any administrative or alternative dispute resolution proceeding, the Company hereby grants us a security interest and a lien upon any sum(s) that may be recovered or received by the Company or on the Company's behalf (or which the Company is or becomes entitled to recover or receive) in connection with such litigation, threatened litigation or other proceeding, from any source or for any reason, including without limitation pursuant to any judgment, arbitration decision, settlement, or insurance policy. The Company expressly authorizes us to take appropriate actions to perfect these security interests or liens, if necessary, and to resort to such security interests or liens to obtain partial or total satisfaction of any obligation or debt that the Company may have to us arising from this engagement.

**12. Retainer.** A retainer is an advance payment appropriate to the size and scope of the matter that we apply toward amounts the Company thereafter owes us. We will not require a retainer at this time, but circumstances may arise in the future in which we conclude that a retainer would be appropriate. In the event we ask for a retainer, we will continue to issue statements of account and expect payment monthly. The retainer would be held and applied to our final statement (with any unused amount being returned to the Company), unless in our discretion we determine to apply it sooner against one or more earlier statements.

**13. Confidentiality.** For our relationship with the Company to succeed, it is essential for the Company to provide us with all factual information reasonably relevant and material to the subject matter of our engagement. A lawyer has an ethical obligation to preserve the confidences and secrets of a client. That duty is one we regard with the utmost seriousness. In instances in which we represent a corporation, partnership or other legal entity, our relationship is with, and hence this duty of confidentiality is owed to, the entity, and not to the entity's parent or subsidiary entities, or its shareholders, members, officers, directors or partners.

# Cooley

14. **Reporting Obligations.** Under certain circumstances, the law may impose upon us a duty to report information to government authorities or others. For example, in the event we provide legal advice in connection with certain transactions described in the regulations under section 6011 of the Internal Revenue Code, we may have a duty to disclose information under section 6111 or 6112, or both, of the Internal Revenue Code. While these circumstances are fairly limited, and while we would make every effort to consult with the Company before making a required disclosure, the Company understands and agrees that if we determine, in our sole discretion, that we have a legal duty to make a disclosure, we will do so.

15. **Conflicts of Interest.** We wish to avoid any circumstances in which the Company would regard our representation of another client to be inconsistent with our duties to, and understandings with, the Company. Because we represent a large number of clients in a wide variety of legal matters, it is possible that we will be asked to represent a client whose interests are actually or potentially adverse to the Company's interests, including, without limitation, in a business licensing, financing or restructuring transaction, or in bankruptcy or insolvency proceedings or litigation. In any of these circumstances, we agree that we will not undertake any such representation if the other representation is related to a matter in which we currently represent the Company. If the matters are not related, however, then the Company agrees that we will be free to undertake such an unrelated adverse representation provided that (a) the unrelated representation will not implicate any confidential information we have received from the Company, (b) the lawyers in our firm engaged on the other matter are screened from involvement in the Company's matter and (c) the other client has consented to our continued representation of the Company. The Company's agreement set forth in the preceding sentence reflects the Company's acknowledgment that such adverse representations are foreseeable and waives any right the Company may have to object to our representation in an unrelated matter of another client whose interests are adverse to the Company's.

16. **Termination.** We sincerely hope and trust that our relationship will be a long and fruitful one. Nevertheless, the Company will have the right to terminate our engagement at any time. We also will have the right to terminate our engagement at any time, subject always to any applicable rule of court or administrative agency, and subject to giving the Company a reasonable opportunity to arrange any necessary alternative representation. If judicial or administrative approval is required for us to withdraw, the Company agrees that it will not oppose such withdrawal. In litigation matters, the Company agrees that as of 60 days prior to any scheduled trial or binding arbitration date, all fees and costs incurred up to that point will be paid current, and the Company will (a) provide us with a retainer or augment any existing retainer or (b) make some other arrangement satisfactory to us, so as to insure payment of all fees and costs estimated to be incurred from then through the end of the trial or arbitration. In the event that the Company is unable or unwilling to satisfy the foregoing requirements to our satisfaction in any litigation matter, we may apply to the court to withdraw as the Company's counsel in such matter, and the Company hereby consents to such withdrawal.

17. **Disposition of Files.** We have a policy to destroy client files at various times after the completion of matters. We will make reasonable efforts to notify the Company in writing at least 30 days before the scheduled destruction date of any of its files. The Company will then have the option to take possession of the files. It will be the Company's obligation to maintain a current address with us in order to communicate with the Company concerning such matters.

18. **Understandings.** The Company understands that any estimate we might provide for the fees and costs associated with our engagement on a matter is only an estimate based on a number of uncertain factors, as to which information is generally incomplete and constantly changing, and that the actual fees and costs will be determined in accordance with the provisions of our Engagement Agreement and may vary significantly from the estimate. The Company also understands that we cannot make and have not made any guarantees regarding the outcome of any matter. Any discussions we have with the Company in this regard are limited by our knowledge at the time. The Company acknowledges that it has been given a reasonable opportunity to seek the advice of independent counsel of its choice with respect

# Cooley

to this Engagement Agreement and the Arbitration Provision attached as Schedule B, and that the Company has availed itself of that opportunity if and to the extent the Company deemed it appropriate to do so.

You also understand that the attorneys who will handle this matter are not admitted to practice in all jurisdictions. Accordingly, with respect to matters that may involve the laws of a particular state or country in which we are not admitted, if appropriate we may involve an attorney in another office of the firm in that jurisdiction or such other local counsel as you may designate, regarding the application, interpretation and enforcement of those laws.

      **19.**      **Arbitration.** We appreciate the opportunity to serve as the Company's attorneys and anticipate a productive and harmonious relationship. If, however, the Company becomes dissatisfied for any reason with the services we have performed or the fees charged, we encourage you to bring that dissatisfaction to our attention immediately. If we perceive a problem with the relationship or the representation, we will discuss it with the Company. Most problems should be rectifiable through such communication. However, should a dispute arise between us which cannot be resolved in this manner, then to the extent permitted by law, we and the Company agree to be bound by the Arbitration Provision attached hereto as Schedule B and incorporated herein.

# Cooley



# SCHEDULE A

## SELECTED STANDARD COSTS AND DISBURSEMENTS

| | |
|---|---|
| Messenger Service | Cost |
| Postage | Cost |
| Research Databases | Cost |
| Facsimile Transmission of Documents | $1.00 per page plus long distance charges at AT&T's standard direct dial rate |
| Reproduction of Documents: | |
|     Scanning, Printing, Photocopying | $.20 per page (first 500 copies) $.14 per page (quantities over 500 copies) |
|     Color Photocopying and Printing | $1.00 per page |
| Document Processing | $55.00 per hour |

Cooley In-House Electronic Discovery/Litigation Support

| | |
|---|---|
| Data Processing: | $60 per GB |
| Monthly Data Hosting | $8.00 per GB |
| Monthly Relativity User Fees: | $75 per User |
| Materials / supplies (CDs, DVDs, hard drives, etc.) | Cost |

Trademark Docketing

In addition to our regular hourly professional fees, we also charge a one-time, upfront trademark docketing fee for each new trademark application. This fee includes the firm's time involved in opening, managing and updating the docket. The current fees are as follows:

| Type of Trademark Filing | 2022 US Fixed Fee (USD) |
|---|---|
| U.S. or other single-country Trademark Application | $475 |
| International Trademark Application via Madrid Protocol (1-3 designated countries) | $475 |
| International Trademark Application via Madrid Protocol (4-6 designated countries) | $800 |
| International Trademark Application via Madrid Protocol (7 or more designated countries) | $1,050 |

| | |
|---|---|
| Foreign Professional Services | Cost plus 10% |



# SCHEDULE B

# ARBITRATION PROVISION

Any claim, dispute or controversy of whatever nature arising out of or relating to this Engagement Agreement ("Agreement") or any engagement or services rendered pursuant to this Agreement, including, without limitation, any action or claim based on tort, contract, or statute, or concerning the interpretation, effect, termination, validity, performance and/or breach of this Agreement or services rendered hereunder ("Claim"), shall be resolved by final and binding arbitration (except to the extent that final and binding arbitration of disputes involving the payment of fees is prohibited by California law).  The arbitration shall be conducted by and submitted to a single arbitrator ("Arbitrator") selected from and administered by the San Francisco, California office of JAMS ("JAMS"), in accordance with its then existing Comprehensive Arbitration Rules & Procedures; however, upon the written demand of any party to the arbitration, the arbitration shall be conducted by and submitted to three Arbitrators selected from and administered by the JAMS Comprehensive Arbitration Rules & Procedures.  The arbitration hearing shall be held in San Francisco, California.  The provisions of California Code of Civil Procedure sections 1283.05 and 1283.1 or their successor sections are incorporated in and made a part of this Arbitration Provision.  This means that depositions may be taken and full discovery may be obtained in any arbitration commenced under this Arbitration Provision.

The Arbitrator(s) shall NOT be authorized to reform, modify or materially change this Agreement or other agreements entered into between the parties.  Each party shall bear its own attorneys' fees, costs and disbursements arising out of the arbitration, and shall pay an equal share of the fees and costs of the Arbitrator(s) and JAMS; however, the Arbitrator(s) shall be authorized to determine whether a party is the prevailing party and, if so, to award to that prevailing party reimbursement for its reasonable attorneys' fees, costs and disbursements (including, for example, expert witness fees and expenses, photocopy charges, travel expenses, etc.), and/or the fees and costs of the Arbitrator(s) and JAMS.  The Arbitrator(s), and not a court, shall also be authorized to determine whether this Arbitration Provision applies to a Claim sought to be resolved hereunder. The Arbitrator(s) shall, within fifteen (15) calendar days after the conclusion of the arbitration hearing, issue a written award and a written statement of decision describing the material factual findings and conclusions on which the award is based, including the calculation of any damages awarded.

Absent the filing of an application to correct or vacate the arbitration award under California Code of Civil Procedure sections 1285 through 1288.8, each party shall fully perform and satisfy the arbitration award within 15 days of the service of the award.  Judgment on the award may be entered by any court of competent jurisdiction.  **By agreeing to this binding Arbitration Provision, the parties understand that they are waiving certain rights and protections which may otherwise be available if a Claim were determined by litigation in court, including, without limitation, the right to seek or obtain certain types of damages precluded by this Arbitration Provision, the right to a jury trial, certain rights of appeal, and a right to invoke formal rules of procedure and evidence.**

266980192 v1